LAW FIRM OF BRIAN W. HOFMEISTER, LLC
By: Brian W. Hofmeister, Esq.
691 State Highway 33
Trenton, New Jersey  08619
(609) 890-1500
(609) 890-6961 - facsimile
bwh@hofmeisterfirm.com
Attorney for Debtor

|  |  |
|---|---|
| In the Matter of: | ) UNITED STATES BANKRUPTCY COURT |
|  | ) FOR THE DISTRICT OF NEW JERSEY |
|  | ) |
| AMERIRESOURCE TECHNOLOGIES, INC., | ) CASE NO. 15-23617 |
|  | ) |
|  | ) |
| Debtor. | ) |
|  | ) |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING REORGANIZING CHAPTER 11 PLAN PROPOSED BY THE DEBTOR, AMERIRESOURCE TECHNOLOGIES, INC.**

**PLEASE READ THE DISCLOSURE STATEMENT CAREFULLY.  THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION.   THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE.  THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

AMERIRESOURCE TECHNOLOGIES, INC.


_/s/William Robins_____
William Robins, President


Dated: March 9, 2016

## TABLE OF CONTENTS

**Page**

| | | | |
|---|---|---|---|
| I. | | **INTRODUCTION** ............................................................... | 1 |
| | A. | Purpose of this Document .................................................. | 1 |
| | B. | Confirmation Procedures ................................................... | 3 |
| | 1. | Time and Place of the Confirmation Hearing ................. | 3 |
| | | 2. | Deadline for Voting For or Against the Plan ........................ | 3 |
| | | 3. | Deadline for Objecting to the Confirmation of the Plan ...... | 4 |
| | | 4. | Identify of Person to Contact for More Information Regarding The Plan ................................................... | 4 |
| | C. | Disclaimer ......................................................... | 4 |

| | | | |
|---|---|---|---|
| II. | | **BACKGROUND** | |
| | A. | Description and History of the Debtor's Business .................. | 4 |
| | B. | Principals/Affiliates of Debtor's Business ............................ | 6 |
| | C. | Management of the Debtor Before the Bankruptcy ................ | 6 |
| | D. | Significant Events During the Bankruptcy ........................... | 6 |
| | | 1. | Bankruptcy Proceedings ............................................. | 6 |
| | | 2. | Other Legal Proceedings ............................................. | 6 |
| | | 3. | Actual and Projected Recovery of Preferential or Fraudulent Transfers ..................................... | 6 |
| | | 4. | Procedures Implemented to Resolve Financial Problems ............ | 6 |
| | | 5. | Current and Historical Financial Conditions ............................... | 7 |

| | | | |
|---|---|---|---|
| III. | | **SUMMARY OF THE PLAN OF REORGANIZATION** | |
| | A. | What Creditors and Interest Holders Will Receive Under the Proposed Plan ............................................... | 7 |
| | B. | Unclassified Claims ..................................................... | 7 |
| | | 1. | Administrative Expenses and Fees ............................... | 7 |
| | | 2. | Priority Tax Claims ................................................... | 9 |
| | C. | Classified Claims and Interests ........................................ | 9 |
| | | 1. | Classes of Secured Claims ......................................... | 9 |
| | | 2. | Classes of Priority Unsecured Claims ....................... | 10 |
| | | 3. | Class of General Unsecured Claims ......................... | 10 |
| | | 4. | Class(es) of Interest Holders ..................................... | 11 |
| | D. | Means of Effectuating the Plan ........................................ | 12 |
| | | 1. | Funding for the Plan ................................................ | 12 |
| | | 2. | Post-confirmation Management ............................... | 12 |
| | | 3. | Disbursing Agent ..................................................... | 12 |
| | E. | Other Provisions of the Plan ........................................... | 13 |
| | | 1. | Executory Contracts and Unexpired Leases ........................... | 13 |

i

|  |  |  |  |
|---|---|---|---|
| | 2. | Changes in Rates Subject to Regulatory Commission Approval | 13 |
| | 3. | Retention of Jurisdiction ................................................................ | 13 |
| | 4. | Procedures for Resolving Contested Claims .............................. | 13 |
| | 5. | Effective Date ................................................................................ | 14 |
| | 6. | Modification .................................................................................. | 14 |
| F. | | Tax Consequence of Plan ...................................................................... | 14 |
| G. | | Risk Factors .......................................................................................... | 14 |

**IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

| | | | |
|---|---|---|---|
| A. | | Who May Vote or Object ....................................................................... | 15 |
| | 1. | Who May Object to Confirmation of the Plan .......................... | 15 |
| | 2. | Who May Vote to Accept/Reject the Plan ................................. | 15 |
| | | a.    What is an Allowed Claim/Interest ................................ | 16 |
| | | b.    What is an Impaired Claim/Interest .............................. | 16 |
| | 3. | Who is Not Entitled to Vote ....................................................... | 17 |
| | 4. | Who Can Vote in More Than One Class ................................... | 17 |
| | 5. | Votes Necessary to Confirm the Plan ........................................ | 17 |
| | 6. | Votes Necessary for a Class to Accept the Plan ...................... | 17 |
| | 7. | Treatment of Nonaccepting Classes ......................................... | 18 |
| | 8. | Request for Confirmation Despite Nonacceptance by Impaired Class(es) ....................................................................................... | 18 |
| B. | | Liquidation Analysis ............................................................................. | 18 |
| C. | | Feasibility ............................................................................................. | 20 |

**V.    EFFECT OF CONFIRMATION OF PLAN**

| | | | |
|---|---|---|---|
| A. | | Discharge ............................................................................................... | 21 |
| B. | | Revesting of Property in the Debtor ...................................................... | 21 |
| C. | | Modification of Plan ............................................................................. | 21 |
| D. | | Post-Confirmation Conversion/Dismissal ............................................ | 22 |
| F. | | Release ................................................................................................... | 22 |

# I.

## INTRODUCTION

AmeriResource Technologies, Inc. (the "Debtor" or "Ario") is currently in the business of making loans to small companies.

On July 21, 2015, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101, et seq.  Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS EXHIBIT A.

This is a reorganization plan.  In other words, the Proponent seeks to accomplish payments under the Plan by  post-petition refinancing, cash on hand and future income.

**A.**   **Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

      **(1)**   **WHO CAN VOTE OR OBJECT,**

      **(2)**   **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN**

1

**LIQUIDATION,**

**(3)      THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS**

**DURING THE BANKRUPTCY,**

**(4)      WHAT THE COURT WILL CONSIDER WHEN DECIDING**

**WHETHER TO CONFIRM THE PLAN,**

**(5)      THE EFFECT OF CONFIRMATION, AND**

**(6)      THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistences between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan.  The Bankruptcy Court ("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor and who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with

2

such solicitation.

**B.      Confirmation Procedures**

Persons Potentially Eligible to Vote on the Plan

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the claims bar date and hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan.   The Ballot form that you received does not constitute a proof of claim.   If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the Office of the Clerk of the Bankruptcy Court located at United States Bankruptcy Court, 402 East State Street, Trenton, New Jersey 08608.   The Clerk of the Bankruptcy Court will not provide this information by telephone.

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.   IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.   HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.      Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, 2016 at 2:00 p.m. in Courtroom __, United States Bankruptcy Court, 402 East State Street, Trenton, New Jersey 08608.

**2.      Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Brian W. Hofmeister, Esq., Law Firm of Brian W. Hofmeister, LLC,

691 State Highway 33, Trenton, New Jersey 08619.

Your ballot must be received by _____, 2016 or it will not be counted.

### 3.    Deadline For Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon Brian W. Hofmeister, Esq., Law Firm of Brian W. Hofmeister, LLC, 691 State Highway 33, Trenton, New Jersey 08619 by _____, 2016.

### 4.    Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Brian W. Hofmeister, Esq., Law Firm of Brian W. Hofmeister, LLC, 691 State Highway 33, Trenton, New Jersey 08619.

### C.    Disclaimer

The financial data relied upon in formulating the Plan is based on the Debtors' Monthly Operating Reports.  The information contained in this Disclosure Statement is provided by the Debtors.  The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponents' best knowledge.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

## II.

## BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor was originally KLH Engineering Company, Inc. ("KLH").  It was formed in 1989 to do civil engineering.  In 1992 KLH went public.  In 1994 KLH acquired Tomahawk Construction

Company, Inc. in a reverse merger in which the president of Tomahawk, Delmar Janovec, became president of KLH. In 1995 KLH changed its name to AmeriResource Technologies, Inc. On August 1, 1996, Ario borrowed $500,000.00 from the American Factors Group ("AFG"), a predecessor of Payroll Funding Company ("PFC"). Ario defaulted on its debt to AFG in 1997 whereupon the companies entered into an arbitration that resulted in a judgment against Ario, which was docketed on October 6, 1988. Ario was unable to discharge the debt so on July 12, 2007 the parties entered into a Settlement Agreement which specified the amount owing as $646,312.63, as of March 31, 2006. In 2009, Ario applied to the SEC to be a non-reporting company and was approved. At the time, it had over 30,000 stockholders, most of whom were in street names. A minimal amount of trading has occurred since then. Ario made substantial payments after 2000 so on March 27, 2012 Ario's obligations to PFC was redrafted into a Promissory Note of $314,351.26, payable on demand, with interest set at 12% compounded monthly and payable quarterly. Janovec guaranteed the Note and pledged his controlling interest in Ario as collateral, giving PFC a proxy to vote his stock.

Ario continued to have difficulty in making payments so on June 30, 2104 PFC exercised its proxy to vote Janovec's stock and replaced Janovec as president with William Robins. Under its new management, Ario began making loans to smaller companies. These loans were originated and serviced by PFC for a fee. A total of $3,000,000.00 of loans were made in 2014. However, actions by certain creditors and dissident stockholders forced PFC to terminate originating loans for Ario. As of the Petition Date, the debt owed by Ario to PFC totaled approximately $585,243.48 and PFC was holding as cash collateral $343,000.00 so that the effective debt was pre-petition secured debt is $242,243.48. On December 22, 2015, the Court entered an Order authorizing post-petition financing by PFC to the Debtor. Starting January 2016 and every month thereafter, PFC will advance $250,000.00 (and additional funding as needed) to the Debtor, which will be used to make loans originated by PFC.

5

**B.      Principals/Affiliates of Debtor's Business**

William Robins, President

**C.      Management of the Debtor Before and During the Bankruptcy**

William Robins, President

**D.      Significant Events During the Bankruptcy**

**1.      Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this case:

(i)      The Court has approved the employment of the following professionals:

Law Firm of Brian W. Hofmeister, LLC, as counsel for the Debtor in Possession.

(ii)      Currently the following significant adversary proceedings and motions are still pending:

None.

**2.      Other Legal Proceedings**

In addition to the proceedings discussed above, the Debtor is currently involved in the following non-bankruptcy legal proceedings:

None.

**3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers**

Zero is estimated to be realized from the recovery of fraudulent and preferential transfers.  The following is a summary of the fraudulent conveyance and preference actions filed or to be filed in this case:

None.

**4.      Procedures Implemented to Resolve Financial Problems**

In an effort to remedy the problems that led to the bankruptcy filing, the Debtor's Plan proposes to implement the following procedures: Ario has resumed the program originally started in 2014 in which it makes loans to smaller companies, where such loans are originated and serviced by PFC.  Pursuant to

6

the approved DIP financing the Debtor will receive monthly advances from PFC to fund loans originated

and serviced by PFC.  In addition, PFC has agreed to reduce the interest rate on its secured pre-petition

note receivable from 12% to 6%.

Ario's monthly budget under the Plan will be as follows:

| | |
|---|---|
| Overhead (Professional Fees & Costs) | $ 5,000.00 |
| Amortization of PFC Secured Note | $ 9,754.00 |
| Interest on PFC Note Balance | $ 1,000.00 |
| Payment to Unsecured Creditors | $ 4,059.00 |
| Total | $19,813.00 |

See five (5) year projection attached hereto as Exhibit "B".

### 5.    Current and Historical Financial Conditions

See Monthly Operating Report of the Debtor attached hereto as Exhibit "C".

### III

### SUMMARY OF THE PLAN OF REORGANIZATION

### A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan

The Plan classifies claims and interests in various classes.  The Plan states whether each class of

claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes.  They are not considered impaired and

they do not vote on the Plan because they are automatically entitled to specific treatment provided for them

in the Bankruptcy Code.  As such, the Proponent has not placed the following claims in a class:

### 1.    Administrative Expenses and Fees

Administrative expenses are claims for fees, costs or expenses of administering the Debtor's

Chapter 11 case which are allowed under Code Section 507(a)(1), including all professional compensation

requests pursuant to Section 330 and 331 of the Code.  The Code requires that all administrative expenses

7

including fees payable to the Bankruptcy Court and the Office of the United States Trustee which were incurred during the pendency of the case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan:

| Name | Amount Estimated | Treatment | Type of Claim |
|---|---|---|---|
| Law Office of Brian W. Hofmeister, LLC | $20,000.00 **Estimated as of March 2016** | Paid in Full on Effective Date or as otherwise agreed | legal fees and expenses |
| Office of the U.S. Trustee Fees | $0.00 | Paid in Full on Effective Date | administrative |
| | TOTAL $20,000.00 | | |

**<u>Court Approval of Professional Compensation Required:</u>**

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application. Only the amount of compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan. Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an

8

administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety (90) days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged.  No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee.  Such fees are determined by statute.

As indicated above, the Debtor will need to pay **$20,000.00** worth of administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed to be paid later or the Court has not yet ruled on the claim.

### 2.  Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the date of the Petition.

The following chart lists all of the Debtors' Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service | $2,000.00 - per Proof of Claim, Claim No. 6 | To be paid in full as of the Effective Date |

### C.  Classified Claims and Interests

### 1.  Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes of creditors containing the holders of the Debtors' secured pre-petition claims and their treatment under this Plan.

| Description | Amount Owed | Treatment |
|---|---|---|
| Payroll Funding Company, Inc. | $585,243.48 | This creditor will be paid over sixty (60) months. In addition, this creditor has agreed to reduce its interest rate on its secured note from 12% to 6%. |

**THIS CLASS IS IMPAIRED BY THE PLAN**.

### 2.    Class of Priority Non-Tax Claims

Certain priority non-tax claims that are referred to in Code Section 507(a)(1), (3), (4), (5), (6), and

(7) are required to be placed in classes.  The types of claims are entitled to priority treatment.

| Description | Amount Owed | Treatment |
|---|---|---|
| None | | |

### 3.    Class of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code Section

507(a).  The following chart identifies this Plan's treatment of the class containing <u>all</u> of Debtor's general

unsecured claims:

| Name | Claim Amount (Scheduled or Proof of Claim Amount) | Treatment |
|---|---|---|
| Akron & Associates | $55,000.00 - Scheduled | To be paid on a pro rata basis |
| Broadridge Financial Solutions | $1,066.64 - Proof of Claim, Claim No. 7 | To be paid on a pro rata basis |
| Concourse Executive Suites | $18,244.00 - Scheduled | To be paid on a pro rata basis |
| Desert Vista Capital, LLC | $120,000.00 - Scheduled | To be paid on a pro rata basis |
| Internal Revenue Service | $3,000.00 - Proof of Claim, Claim No. 6 | To be paid on a pro rata basis |
| Interwest Transfer Co. | $4,060.00 - Scheduled | To be paid on a pro rata basis |
| Lynn Barton | $172,400.00 - Proof of Claim, Claim No. 4 | To be paid on a pro rata basis |

10

| Madsen Associates CPA, Inc. | $25,597.00 - Proof of Claim, Claim No. 1 | To be paid on a pro rata basis |
|---|---|---|
| Marilyn Janovec | $103,685.79 - Proof of Claim, Claim No. 8 | To be paid on a pro rata basis |
| Marilyn Janovec | $19,500.00 - Proof of Claim, Claim No. 9 | To be paid on a pro rata basis |
| Market Wire | $2,705.00 - Scheduled | To be paid on a pro rata basis |
| Marty Berto & Carrie Cerenzie | $10,000.00 - Scheduled | Claim to be modified to Equity Class |
| NIR Group, Inc. | $234,000.00 - Scheduled | Claim to be expunged |
| SCS | $947.00 - Scheduled | To be paid on a pro rata basis |
| Strasburger & Price | $5,984.50 - Proof of Claim, Claim No. 5 | To be paid on a pro rata basis |
| Woltjen Law | $9,981.00 - Scheduled | To be paid on a pro rata basis |

The total amount of estimated allowed unsecured claims, as modified, are in the sum of $487,170.93.

The proposed dividend under the Plan to Class 3 General Unsecured Claimants is $243,585.47 payable over sixty (60) months on a pro rata basis. Class 3 claims will receive approximately 50% of allowed claims.

**THIS CLASS IS IMPAIRED BY THE PLAN.**

**4.      Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtors. If the debtor is a corporation, entities holding preferred or common stock in the debtor are interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. If the debtor is an individual, the debtor is the interest holder. The following chart identifies the Plan's treatment of the class of interest holders:

11

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| Delmar Janovec | 80% ownership of preferred stock | Yes | All old equity/membership interests shall be extinguished and receive no distribution or value. |
| Fractional Shareholders | This class also includes all shareholders listed in the Debtor's Schedule F | Yes | All old equity/membership interests shall be extinguished and receive no distribution or value. |
| Douglas J. Horton | Proof of Claim No. 2 as a secured claim. Motion to be filed to modify claim to equity holder | Yes | All old equity/membership interests shall be extinguished and receive no distribution or value. |

**THIS CLASS IS IMPAIRED AND IS DEEMED TO HAVE REJECTED THE PLAN.**

**D.    Means of Effectuating the Plan**

      **1.    Funding for the Plan**

The Plan will be funded by the following:

Payroll Funding Co. will be the plan sponsor and will put up $25,000.00 in new capital contribution and reduce the interest rate on its secured note from 12% to 6% in return for 100% of shares of stock of the Debtor.

      **2.    Post-Confirmation Management**

Payroll Funding Co. shall manage the Debtor's operations.

      **3.    Disbursing Agent**

Payroll Funding Co. ("Disbursing Agent") shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve no bond and shall

12

receive no funds from distribution services rendered and expenses incurred pursuant to the Plan.

## E.      Other Provisions of the Plan

### 1.      Executory Contracts and Unexpired Leases

All Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtor, in writing or previously assumed by Court Order, shall be deemed rejected.  All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (1) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (3) days after the Confirmation Date.  Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

### 2.      Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

### 3.      Retention of Jurisdiction

The Court will retain jurisdiction as provided in the Plan.

### 4.      Procedures for Resolving Contested Claims

The Debtor and/or Disbursing Agent shall have 60 days subsequent to confirmation to object to the allowance of claims.  The Proponent has reviewed the claims that have been filed.  The Proponent intends to object or cause the Disbursing Agent to object to the following number and amounts of claims in each class:

Claim No. 3 - filed by the Internal Revenue Service is a duplicate of claim No. 6. Claim to be expunged.

Claim No. 5 - filed by Douglas J. Horton as a secured claim.  Motion to be filed to modify claim to class of equity holders.

Scheduled Claim of Marty Berto & Carrie Cerenzie - Motion to be filed to modify claim to class

13

of equity holders as this creditor's claim is based upon purchased shares of stock in the Debtor.

<u>Scheduled Claim of NIR Group, Inc.</u> - Motion to be filed to expunge claim based upon the fact that this creditor's claim is for unperformed obligations when it ceased operating and filed for bankruptcy.

### 5.    Effective Date

**The Plan will become effective on the Effective Date which is the Date on which the order of confirmation becomes final.**

### 6.    Modification

The Plan Proponent may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

### F.    Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers of possible tax issues this Plan may present to the Debtors.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences that the Plan will have on the Debtor's tax liability:

None.

### G.    Risk Factors

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan.  You are encourages to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own

advisors.  Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation.

## IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion in intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Proponent CANNOT and DOES NOT represent that the discussion below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pay creditors at least as much as creditors would receive in a Chapter 7 liquidation, and that the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

**A.    Who May Vote or Object**

### 1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (i) allowed or allowed for voting purposes and (2) classified in an impaired class.

15

### a.    What is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have

the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings

a motion objecting to the claim.  When an objection to a claim or interest in filed, the creditor or interest

holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules

the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS DECEMBER**

**21, 2015.**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or

interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules

and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has

objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected

to the interest.

### b.    What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is

<u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable or contractual rights of

the members of that class.  For example, a class comprised of general unsecured claims is impaired if the

Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, the Proponent believes that: (i) class 1 and class 3 are impaired and that holders of

claims in each of these classes are therefore entitled to vote to accept or reject the Plan. Class 4 is impaired

and is deemed to have rejected the Plan since the Class 4 Claims are not receiving a distribution under the

Plan.  As such, Class 4 Claims will not be entitled to vote to accept or reject the Plan. Parties who dispute

the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an

16

objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.   Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.   Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in party as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section (IV.A.8).

### 6.   Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (½) in number

17

and at least two-thirds (2/3) in dollar amount of the allowed claims that actually vote, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

### 7.   Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.   Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan asks the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

### B.   Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sale proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to

18

their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this requirement is met here for the following reasons:

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation:

**Assets**

| | | |
|---|---|---|
| Real Property | $0.00 | |
| Minus: Mortgage | $0.00 | |
| Any exemption | $0.00 | |
| Cost of Sale | $ 0.00 | |
| | | |
| Net equity | $0.00 | |

Personal property [segregate by type]
| | |
|---|---|
| Pre-Petition Account Receivable being held by PFC: | $343,000.00 |
| Post-Petition Account Receivable: | $ 25,648.00 |
| Cash (as of 2/29/2016): | $ 77,601.28 |

Total Assets:  $446,249.28

**Liabilities**

Secured Claims:  $0.00

Payroll Funding Company, Inc.  $585,243.48
Total Secured Claims:

$585,243.48

19

Priority Claims:

| | |
|---|---|
| Chapter 7 admin. expenses: | $10,000.00 |
| Chapter11 admin. expenses: | $20,000.00 |
| Other priority claims (taxes): | $ 2,000.00 |
| Other priority claims: | $      0.00 |

Total priority claims:                                $32,000.00

Amount available for unsecured
claims (total assets minus secured and
priority claims)                                $        0.00
Unsecured claims:                                $786,170.93

Total unsecured claims                $786,170.93

Estimated dividend in Chapter 7
(amount available - unsecured claims)        0.0%

**C.      Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied.  The only substantial payments to be made on the Effective Date are administrative fees of professionals and United States Trustee's fees.  The Debtors anticipate that there will be sufficient cash on hand in the DIP Account to make these payments or in the alternative, the professionals have agreed to be paid allowed administrative fees over time.  See five (5) year cash flow projection attached hereto as Exhibit "B".

20

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.  The five (5) year cash flow projection (attached hereto as Exhibit "C") demonstrates the feasibility of the Plan.

Accordingly, the Plan Proponent believes, on the basis of the foregoing that the Plan is feasible.

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.**     **Discharge**

The Plan provides that upon confirmation of the Plan, the Debtors shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However, any liability imposed by the Plan will <u>not</u> be discharged.  If Confirmation of the Plan does not occur or if, after Confirmation occurs, the Debtors elect to terminate the Plan, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against the Debtors or their estates or any other persons, or to prejudice in any manner the rights of the Debtors or their estates or any person in any further proceeding involving the Debtors or their estates.  The provisions of the plan shall be binding upon the Debtors, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

**B.**     **Revesting of Property in the Debtor**

Except as provided in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.**     **Modification of Plan**

The Proponent may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the Plan before

21

Confirmation.

The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.  Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**D.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b).  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

**F.     Release**

Except as otherwise expressly provided for in this Plan, the distributions and rights afforded in the Plan shall be complete and full satisfaction and release, effective as of the Effective Date, of all Claims against the Debtor or any of its assets or properties of any nature whatsoever.  Commencing on the Effective Date, except as otherwise expressly provided for in this Plan, all Claimants shall be precluded forever from asserting against the Debtor and its agents, employees, principals, members, directors, officers, shareholders, representative, guarantors, financial advisors, accountants, attorneys, or employees

22

and its assets and properties any other or further liabilities, liens, Claims, encumbrances, or obligations, including but not limited to all principal and accrued and unpaid interest on the debts of the Debtor based on any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim, whether or not Allowed.

Pursuant to Rule 9019 of the Bankruptcy Rules, confirmation of the Plan shall constitute, and all consideration distributed under this Plan shall be in exchange for and in complete satisfaction, settlement, and release of and an injunction against, all as of the Effective Date, any and all Claims, demands, allegations or causes of action, against the Debtor, its principals, guarantors, agents, representatives, directors, officers, shareholders, members, employees, financial advisors, accountants, attorneys, or employees for any liability for actions taken or omitted to be taken in a final decree.

AMERIRESOURCE TECHNOLOGIES, INC.


*/s/William Robins*
William Robins, President

Dated: March 9, 2016

23